UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>  -against-<br><br>OLUWASEUN ADELEKAN,<br><br>    Defendant. | 19 Cr. 291 (LAP)<br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

On October 27, 2022 Defendant Oluwaseun Adelekan filed a motion requesting bail pending appeal pursuant to 18 U.S.C. section 3143(b) ("Motion for Bail").  (Motion for Bail, dated October 27, 2022 [dkt. no. 609].)  On November 17, 2022 the Government filed its opposition ("Gov't Opp.").  (Gov't Opp., dated November 17, 2022 [dkt. no. 613].)  On December 6, 2022 Mr. Adelekan filed a reply in further support of his Motion for Bail ("Adelekan Reply").  (Adelekan Reply, dated December 6, 2022 [dkt. no. 620].)  Upon due consideration of the submissions set forth above, Mr. Adelekan's Motion for Bail is DENIED for the reasons set forth below.

I. **Background**

Mr. Adelekan was indicted for his participation, between July 2016 and April 2019, in a fraudulent scheme to defraud businesses and individuals (the "Victims") by using false and misleading representations to induce the Victims to wire funds

1

to bank accounts controlled by Mr. Adelekan and his co-conspirators.  (Sealed Indictment, dated April 23, 2019 [dkt. no. 2] ¶¶ 1-2.)  Mr. Adelekan was alleged to have opened and maintained the accounts into which the Victims were induced to wire the funds.  (Id. ¶ 3.)

On October 19, 2021, trial began against Mr. Adelekan. (Trial Transcript, dated October 19, 2021 [dkt. no. 387].)  On October 26, 2021, the jury returned a guilty verdict against Mr. Adelekan for wire fraud conspiracy, money laundering conspiracy, and aggravated identity theft.  (Trial Transcript ("Oct. 26 Trial Tr."), dated October 26, 2021 [dkt. no. 397] at 922-23.) After the guilty verdict, the Government sought remand of Mr. Adelekan.  (Id. at 926-27.)  After hearing argument from the parties, the Court remanded Mr. Adelekan, finding that Mr. Adelekan failed to show by clear and convincing evidence that he was not a flight risk because (i) the "amount of money that went through [co- conspirators'] accounts . . . indicates the possibility of huge sums of money being available," (ii) he had an additional incentive to flee because he was facing a mandatory term of imprisonment, and (iii) he had connections to Nigeria.  (Id. at 930.)

On May 25, 2022, the Court sentenced Mr. Adelekan to eighty-four months' imprisonment on the wire fraud conspiracy and money laundering conspiracy counts, to run consecutive to a

term of imprisonment of twenty-four months on the aggravated identity theft count. (Sentencing Transcript ("Sentencing Tr."), dated May 25, 2022 [dkt. no. 539] at 25.) At his sentencing, the Court took into account Mr. Adelekan's alleged participation in a separate fraudulent scheme while he was on pretrial release and observed that "protecting the public from further crimes of this defendant is important as we learned when this defendant was on pretrial release." (Id. at 19, 23.)

## II. Legal Standard

Pursuant to 18 U.S.C. section 3143(b), a court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal unless it finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community if released," and

> that the appeal is not for the purpose of
> delay and raises a substantial question of
> law or fact likely to result in (i)
> reversal, (ii) an order for a new trial,
> (iii) a sentence that does not include a
> term of imprisonment, or (iv) a reduced
> sentence to a term of imprisonment less than
> the total of the time already served plus
> the expected duration of the appeal process.

18 U.S.C. § 3143(b).

Section 3143 establishes a "presumption in favor of detention" post-verdict that a defendant "must rebut . . . with clear and convincing evidence that he is not a risk of flight or

3

a danger to any person or the community." United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004).  "Potential 'danger to any person or the community' includes the risk that a defendant might cause financial or 'economic harm.'" United States v. Gulkarov, 2022 U.S. Dist. LEXIS 12597, at *7 (S.D.N.Y. Jan. 24, 2022) (internal citations omitted); see United States v. Madoff, 316 F. App'x 58, 59-60 (2d Cir. 2009) (summary order) (noting that there was "substantial evidence in the record" that would "support a finding by the district court that bail should be denied to the defendant because he had failed to prove by clear and convincing evidence that he does 'not . . . pose a danger to the [pecuniary] safety of any other person or the community if released'" (alterations in the original) (citing United States v. Reynolds, 956 F.2d 192, 192-93 (9th Cir. 1992) (order) for the proposition that "[d]anger may, at least in some cases, encompass pecuniary or economic harm")).

    A defendant also bears "the burden of persuasion" to demonstrate that the second prong is satisfied by showing that "the appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial on all of the counts for which [the defendant] received prison terms." United States v. Randell, 761 F.2d 122, 126 (2d Cir. 1985).  "Put simply, the second prong asks whether there is a reasonable likelihood that a defendant will not face further imprisonment.

4

If a convicted felon will ultimately be imprisoned anyway, there is no benefit in putting off the inevitable." United States v. Vilar, 2013 U.S. Dist. LEXIS 208219, at *20-21 (S.D.N.Y. Nov. 19, 2013) (Sullivan, J.) (internal citation omitted).

Because Mr. Adelekan proceeds pro se in this application, the Court provides him the "special solicitude" to which he is entitled and interprets his papers "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 472 (2d Cir. 2006) (internal quotations omitted).

### III. Discussion

Mr. Adelekan argues that he satisfies the first element because he (i) "is a 40-year old man with no prior arrests or history of violence and now convicted of a non-violent crime" who has "met and maintained all conditions of release set by the Court," (ii) would reside with his sister in Maryland, (iii) is gainfully employed, and (iv) is "focused on aggressively pursuing justice through the appellate process."  (Motion for Bail 1-4.)  He argues that "[a] defendant's strong community ties, compliance with bond conditions, and prompt attendance at the District Court hearings all favor a finding the first element is satisfied."  (Id. at 3 (citing United States v. Galanis, 695 F. Supp. 1565, 1569-70 (S.D.N.Y. 1988).)

5

The Government responds that Mr. Adelekan has (i) an incentive to flee due to his "lengthy sentence of 108 months' imprisonment," (ii) the potential means to do so, having been involved in a "wide-ranging, multinational, multimillion dollar conspiracy," (iii) a place to flee to via his "significant connections to Nigeria," and (iv) "the ability to make false documents which could aid him in fleeing the country." (Gov't Opp. 4-5.)  The Government also argues that Mr. Adelekan "presents a danger to the community" as "the organizer and leader of an expansive conspiracy that stole millions of dollars from victims over several years." (Id. at 5.)  The Government further argues that "while the defendant was on pretrial release, he is believed to have continued to engage in wire fraud." (Id.)

Mr. Adelekan argues in reply that he is not a flight risk because (i) he has every reason to remain and see his case through an appeal that he believes will be successful, (ii) flight is inconsistent with his character, and (iii) he would not forsake his American citizenship or right to appeal. (Adelekan Reply 3, 6.)  The Court also interprets Mr. Adelekan's argument that the amount of money at issue was in the "hundreds of thousands" as opposed to the "millions" to be an argument that he does not have access to millions of dollars to facilitate his flight. (Id. at 2.)  Mr. Adelekan argues that he

6

is not a danger to the community because he (i) was convicted of a white collar, and not a violent, crime and (ii) was not directly involved with the fraud itself, which the Government has purportedly put a stop to, but only with facilitating the receipt of the illicit funds.  (Id. at 3-4.)  Mr. Adelekan further argues that the Government's allegations regarding his additional alleged misconduct while on parole are too speculative to show he is a danger.  (Id. at 5, 8.)

Mr. Adelekan has not carried his "heavy burden" of rebutting "by clear and convincing evidence" that he does not present a flight risk.  Following Mr. Adelekan's conviction, Mr. Adelekan's counsel raised largely the same arguments that Mr. Adelekan raises now, arguing that he "appeared each and every time he has been required to" and "is a citizen of the United States" with family and children here.  (Oct. 26 Trial Tr. at 928.)  After hearing argument from the parties, the Court remanded Mr. Adelekan.  The Court found that Mr. Adelekan had a "strong incentive to flee" and that he failed to show by clear and convincing evidence that he was not a flight risk because (i) the "amount of money that went through [co-conspirators'] accounts . . . indicates the possibility of huge sums of money being available," (ii) he had an additional incentive to flee because he was facing a mandatory term of imprisonment, and (iii) he had connections to Nigeria.  (Id. at 930.)  All of this

remains true, and Mr. Adelekan has not introduced any new evidence or argument indicating why a different result should follow.  Mr. Adelekan still (i) faces a lengthy sentence of 108 months' imprisonment, (ii) has connections to Nigeria, and (iii) the means to flee, even assuming Mr. Adelekan only has access to hundreds of thousands of dollars as opposed to millions.  The Court therefore finds that Mr. Adelekan has failed to show by clear and convincing evidence that he does not pose a flight risk.  See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [defendant's] Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee.") (summary order); Madoff, 316 F. App'x at 59 (finding that the district court was correct to find that defendant was a flight risk based on lengthy prison sentence and age, combined with "the means--and therefore the ability" to flee, even when those means were denied by defendant).

Mr. Adelekan also has not demonstrated by clear and convincing evidence that he does not pose a danger to the community.  Mr. Adelekan was convicted of wire fraud conspiracy, money laundering conspiracy, and aggravated identity theft.  The scheme underlying Mr. Adelekan's convictions involved tricking victims into wiring money into bank accounts that Mr. Adelekan and his co-conspirators controlled.  Because the scheme does not

8

appear to have required substantial resources, there are likely few barriers preventing Mr. Adelekan from engaging in similar conduct.

Furthermore, even assuming Mr. Adelekan only "facilitat[ed] the fraud" and did not create "the means and manner of th[e] fraudulent operation" and that "the Government has put an end to the fraud," (Adelekan Reply 4), the fact that one fraudulent scheme has been dismantled does not mean that a significant player in that scheme, like Mr. Adelekan, could not repurpose his skills and experience.  Indeed, Mr. Adelekan's alleged criminal activity while on pretrial release suggests exactly this and indicates that he continues to pose a danger to the community.  At his sentencing, the Court "note[d] the defendant's criminal activity undertaken after he was put on supervised release" and observed that "protecting the public from further crimes of this defendant is important as we learned when this defendant was on pretrial release."  (Sentencing Tr. at 23.)  Contrary to Mr. Adelekan's view, it is not the Government's burden to "put forth . . . credible evidence to show" that he is a danger to the community.  (Adelekan Reply 8.) It is his burden to show by clear and convincing evidence that he is not.  Mr. Adelekan does not meaningfully address the economic danger he poses and thus fails to show that he does not pose a danger to the community.

Because the Court finds that Mr. Adelekan has not shown by clear and convincing evidence that he is not a flight risk or that he is not a danger to the community, the Court declines to consider his arguments regarding his likelihood of success on appeal.

## IV. <u>Conclusion</u>

For the reasons set forth above, Mr. Adelekan's Motion for Bail is DENIED.  The Clerk of the Court shall mark the motion at dkt. no. 609 as closed.  The Clerk of the Court shall mail a copy of this order to Mr. Adelekan.

**SO ORDERED.**

Dated:   New York, New York
         December 27, 2022

*Loretta A. Preska*
_____
LORETTA A. PRESKA
Senior United States District Judge